The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good afternoon. Sorry for the delay. So I'm Judge Gould. I'm delighted to be sitting today with Judge Clifton and with Judge Miller. And I just want to say at the outset that all of us very much appreciate the advocates appearing during time of coronavirus to help us out. It's a very difficult time for all, and we appreciate your remote arguments. The Court plans to take a 15-minute recess after the first three cases for planning purposes of anyone listening, so that after the Heron case is argued, we'll break for 15 minutes before coming back to have the last two cases argued. So if we can proceed now with United States v. Sanchez. And for the appellant, we have Michael Ellis for the government. And for the appellees, we have Paul Shelton, I think. Do I have that right? So thanks again to both of you for being here. This case was only set for 10 minutes per side, but because we have so many cases to be argued today, if you can stick close to your time, that will be appreciated. So Mr. Ellis, as the appellant, gets to go first. And if you want to make a rebuttal or argument, please try to stop before the time is all used up. Please proceed. Thank you. Thank you. Good afternoon, Your Honors, and may it please the Court. My name is Michael Ellis. I'm an assistant United States attorney for the Eastern District of Washington based in Spokane. I would like to reserve two minutes for rebuttal. Since initial briefing was filed, the Supreme Court has decided both Palomar-Santiago and Niz-Chavez, both cases discussed in the party's supplemental briefing. One opinion, Palomar-Santiago, fundamentally changes how this court reviews and adjudicates collateral attack under 8 United States Code Section 1326D1 and 2, and independent of any of the other arguments concerning 1326D made by the government, requires reversal of the district court's order dismissing the indictment. The second, Niz-Chavez, is, just as with Piero versus Sessions before it, completely irrelevant. As this court is aware, Section 1326D requires a defendant to demonstrate both that they exhausted administrative remedies and were deprived of the opportunity for judicial review in order to successfully collaterally attack a prior predicate removal. This court has, however, issued a long line of opinions excusing compliance with subsections 1 and 2 for a variety of reasons. No longer. In Palomar-Santiago, the Supreme Court rejected this court's practice of excusing compliance with subsections 1 and 2, holding that each of the statutory requirements of Section 1326D is mandatory. The court found that this court's precedent excusing compliance with subsections 1 and 2 contravenes Congress's mandatory language, and that when Congress uses mandatory language to mandate that an individual exhaust administrative remedies, a lower court may not excuse a failure to exhaust. Here, the district court erred by doing just that, and then excusing Mr. Sanchez's failure to demonstrate subsections 1 and 2. Based on the record, Mr. Sanchez did not appeal to the Board of Immigration Appeals. He did not appeal to this court, the Ninth Circuit. There is no evidence that he attempted to appeal, sought to appeal, appealed at all. As such, he failed to exhaust his administrative remedies following his removal order. He failed to demonstrate that he was deprived of the opportunity for judicial review, and therefore he failed to satisfy Section 1326D, subsections 1 and 2. And that basis alone is sufficient for this court to reverse the district court's decision dismissing the indictment. Mr. Ellis, I understand your position is that the district court didn't make the findings that I'm about to describe, but if there were, hypothetically, if there were findings that, for example, the immigration judge had failed to advise the alien that he could appeal or had failed to tell him of eligibility for relief, our precedent says that exhaustion could be excused in that circumstance. Is it your view that Palomar-Santiago requires us or has abrogated those cases? Yes, Your Honor. I think Palomar-Santiago expressly abrogates that entire line of precedent. It holds that it's mandatory. It holds that it cannot be excused. And so for whatever the reason, and Your Honor is correct that this court previously did consider a number of factors to include those two factors as possible grounds upon which compliance with 1 and 2 could be excused. And following Palomar-Santiago, that is just no longer the case. They are mandatory and cannot be excused. If an alien did not exhaust his administrative remedies, then he cannot successfully collaterally attack under Section 1326D following Palomar-Santiago. Maybe you just answered this, but it's the government's position that there is no showing that the petitioner could make that he was somehow prevented from pursuing an administrative appeal that would permit him to excuse or that would permit that requirement to be excused? That's correct, Your Honor. And again, that follows directly from the Supreme Court's language. It's the Supreme Court that used the word mandatory. It's the Supreme Court that said it cannot be excused. And so based on that, it is the government's position that it cannot be excused, as that's what the Supreme Court has determined. So moving on to the other Supreme Court case, Nis-Chavez. Nis-Chavez has just as much bearing on this case as Pereira v. Sessions before it, which is none whatsoever. This court, in three published opinions, Karenithi, Aguilar-Fermin, and recently Vestid-Hernandez, has confirmed that both Pereira and the definition of a notice to appear under 8 United States Code Section 1229 has no bearing on an immigration court's jurisdiction. Nis-Chavez, in the words of Justice Gorsuch, is simply this next chapter in the same story. And that story concerns just the stop-time rule. Under 1229b, that not an immigration court's jurisdiction. As noted in Karenithi, Pereira is not in any way concerned with jurisdiction. Pereira never mentions the word jurisdiction. Section 1229 never mentions the word jurisdiction. Nis-Chavez never mentions the word jurisdiction. These opinions have nothing to do with an immigration court's jurisdiction, as this court has repeatedly held. Pereira describes itself as a narrow decision, and that was also factored into Karenithi. Narrow. It is narrowly tailored to the stop-time rule. Nis-Chavez, it's also narrowly tailored to the stop-time rule. A decision cannot be narrowly tailored to the stop-time rule, and yet, as Mr. Sanchez would have this court hold, also just happen to dictate the terms of an immigration court's entire jurisdiction, those are mutually exclusive concepts. There is no overlap there. As this court has held multiple times, it is the regulations, the regulations, not section 1229, not section 1229a, not section 1229b, the regulations that govern an immigration court's jurisdiction. And that's primarily because that's the place where the word jurisdiction actually appears, not in the statute. All that is required under the regulations, as clarified by this court recently in Besteed-Hernandez, is the filing of the notice to appear with the immigration court. And that notice to appear does not have to contain the time and date of the removal hearing. It's my understanding, based on the record, that Mr. Sanchez does not contest that a notice to appear was filed, in his case, with the immigration court. Therefore, under Besteed-Hernandez, when that notice to appear was filed, jurisdiction vested and continued until the conclusion of his immigration case. Mr. Sanchez's argument to the contrary, which is also to the contrary of Caramithi, Aguilar-Fermin, and Besteed-Hernandez, must be rejected, as it essentially is in contravention of this court's binding precedent. And Ms. Chavez, as simply a continuation of Pereira, a case this court has already determined to be irrelevant, has no bearing on jurisdiction. Now, as discussed in the briefing, the government has raised additional grounds upon why the district court erred in its application of Section 1326D. However, as noted, this court can adjudicate the 1326D portion of this based solely on Palomar-Santiago. So I would like to reserve my remaining time for rebuttal. Thank you. Thanks, counsel. Okay, Mr. Shelton for the appellee. Good afternoon, Your Honor. Please the court. My name is Paul Shelton. I'm counsel for Mr. Sanchez. Your Honors, I'd like to first discuss Palomar-Santiago, which Mr. Ellis spent the bulk of his time discussing. Palomar-Santiago, first, does not have the broad sweeping effect that Mr. Ellis suggests. It certainly does not say that no non-citizen can successfully collaterally attack a removal order if they did not appeal. I think that there are certainly rationales that if a person is not notified of their right to appeal, they would still be able to collaterally attack despite Palomar. And certainly to the extent that right to appeal was not knowing, intelligent, and voluntary because 1326D arises from a Supreme Court finding that non-citizens must have due process rights, including the right to legitimately attack a removal order. That would completely disappear under the government's theory because hypothetically, somebody could try to file a notice of appeal in an immigration case and be barred somehow by immigration authorities. And if they did not get over that bar by immigration, they would be forever barred from raising a 1326D attack. I think they're trying to sweep Palomar-Santiago too broadly, among other things. Counsel, I mean, there is some pretty broad language in the decision, right? I don't know. Your Honor, at the end of the first paragraph of Section 2, after just having explained that the statutory language is mandatory, the Court says, when Congress uses mandatory language in an exhaustion provision, a court may not excuse a failure to exhaust. That sounds pretty categorical to me, isn't it? I believe it's categorical in the context in which Palomar-Santiago was raised. Never once did any party allege that the appeal waiver in that case was not knowing, intelligent, and voluntary. In fact, in the case below, in the Ninth Circuit, that issue was briefed, and the Ninth Circuit did not address it. So that will be addressed on remand, whether that remaining ground for the validity of the appeal waiver survives Palomar. Palomar certainly does not explicitly say even invalid appeal waivers would no longer allow someone to collaterally attack under 1326D. Let me stop you there for a second. I mean, appeal waiver is one thing. An obligation to exhaust may be something else. The statute says you've got to exhaust. Now, granted, failing to appeal because you didn't know of the appeal might be a justification. But the notion that you have to have an overt or explicit knowing and intelligent waiver appeal strikes me as a much more limited category. What here would excuse the failure to exhaust based on the facts of this case, where counsel was present, where the petitioner said in response in agreement with what counsel has said that he was waiving his appeal, where he didn't do anything thereafter to seek to exhaust? And indeed, the whole argument's about, as I understand it, voluntary departure, which it appears wouldn't have gained him anything except extended detention. So somehow the notion that he didn't knowingly waive strikes me as a problem, both because on the first step I'm not sure that's the legal requirement, and on the second it makes little sense to me that he would have declined the opportunity to leave the country since he brought that up himself.  And so I'm puzzled as to how the arguments, which sound to me pretty theoretical, actually give any basis for petitioner in this case to be able to proceed. Your Honor, and there are two big picture things that your questions go to. First, this idea of exhaustion appellate waiver in the context of a removal order. Exhaustion of administrative remedies means filing an appeal. There is no other administrative remedy to a removal order. So that is what we're discussing and why we're focused. But what requires an explicit waiver as opposed to simply not filing the appeal? There's not a question that he didn't file an appeal, so he did not exhaust. Why is there a requirement for an explicit waiver? I'm sorry, Your Honor, I wasn't trying to interrupt. Your Honor, I interrupted you. I apologize. It's not whether the waiver is explicit or not. It's whether the waiver is knowing. Our position is that if you have a waiver, which we don't deny he waived in this case, he did not file an appeal, he waived his appeal. But if that waiver was not knowing, intelligent, and voluntary, our argument is that under due process analysis, that waiver is not valid and he can still attack. The government's position is that even if that waiver was not knowing, intelligent, and voluntary, it doesn't matter. So those are the two positions the court has to grapple with. With respect to why under the facts of this case was the waiver not knowing, intelligent, and voluntary, I appreciate all the facts Your Honor mentioned. Mr. Sanchez repeatedly declared and testified that he intended to appeal. At one point in the proceedings, he filed an asylum application, which he subsequently withdrew based on his attorney's advice. He asked to seek voluntary departure, and the attorney made it clear in the removal hearing he wanted to return to the United States legally. I think there's a clear inference that his attorney never advised him that his possession of meth conviction might preclude that, in which case asking for voluntary departure and waiving his asylum claim that he'd already filed made no sense. That's why we also argued ineffective assistance of counsel in the district court, which the district court did not have to reach. The problem, and I get the argument, but your time is limited, so I'm going to cut to the chase. The prospects of him obtaining the relief he sought essentially seem to be nil, certainly not enough to make out the reasonable probability that's necessary to make out a case for ineffective assistance of counsel. Your Honor, my response to that would be this. Let's assume the two options were he could appeal and get voluntary departure, or he could not appeal and he's stuck with a removal order. Number one, his conviction that is at issue was only eight months old, so it is still certainly possible he could have directly appealed or collaterally challenged that conviction to try and get it off of his record, in which case a voluntary departure would give him benefit, and moreover, future changes... Did that ever happen, or is this a hypothetical? It hasn't happened because he was deported and soon after returning was again arrested. Doesn't really improve the prospects that we're talking about something other than a hypothetical, though, does it? Well, Your Honor, the hypothetical from the government is there was no hypothetical benefit to him appealing, but if, again, he successfully collaterally challenged that conviction at any point in the future, or if there were changes to either the immigration law, such as that offense being removed from the list of non-waivable grounds of inadmissibility, or changes to substantive criminal law. For instance, the Washington Supreme Court in a case called Blake recently struck down all possession of controlled substance offenses. No one can predict when things like that are going to happen, and if it did, that would open him back up to having a path to legal status because this was his only immigration encounter and his only removal. So, yes, on the bare facts of what existed at the time, it appeared he had no future path to legal status, but he couldn't predict that, and he made it clear he wanted to come back legally, even if the chance was extremely thin, it is, again, logical and reasonable that he would have tried anything if he wanted to be here legally. Have the facts changed at all to date? To date, no, because his conviction was out of Oregon, and I'm not aware of anything that makes that conviction no longer a non-waivable ground of inadmissibility. So we're talking, again, about a purely hypothetical possibility, but not anything that really connects with the actual state of facts. Correct, although I would say the stated fact from Mr. Sanchez is that at the time and to this date, he still asserts, without being contradicted, that he would have wanted to appeal, and we've certainly briefed why that was, and I won't belabor that. Well, we know he came back, so, yeah, he wanted to come back, but coming back and coming back lawfully are two very different things, and I have trouble seeing what possible route there was to him being able to come back lawfully, and hence I have difficulty understanding why an indictment for unlawful reentry after deportation doesn't actually present a legitimate claim against him. Your Honor, in the interest of time, I'd refer to our briefs. We've certainly addressed the Court's concerns, which I think are absolutely legitimate. I understand why the Court asked the questions. I do think there is sufficient evidence and rationale presented by Mr. Sanchez in the Court below and in this Court about why he would have wanted to appeal and why his waiver was not intelligent and voluntary. Lastly, I want to turn briefly to the issue of Ms. Chavez. First, if the Court agrees with the government that the due process motion requires reversal, I actually think it would be appropriate to stay this appeal on that question because Bastide-Hernandez is currently pending petition for en banc rehearing. It would not make sense for this panel to try and grapple with the implications of Ms. Chavez when possibly the en banc Court is going to do so in Bastide-Hernandez, but I do believe that Ms. Chavez clearly changes the analysis, and the one thing I'll agree with Mr. Ellison is, yes, it is the same as Pereira, but it clarifies what we've been saying about Pereira all along. A notice to appear is defined under 1229. To the extent the regulations define it differently, that does not control. This Court can still look to the regulations to define jurisdiction, but the definition of a notice to appear is defined by an unambiguous statute. With that, Your Honors, unless you have any questions, I'm over my time, so I would ask the Court to affirm the District Court's ruling. Thank you, Mr. Schultz. I think we have no questions, so Mr. Ellis has rebuttal time. Thank you, Your Honor. Thank you, Your Honor. I would note counsel said the government is reading Palomar-Santiago with broad, sweeping effect. I'm not reading it any differently than the Supreme Court wrote it, as referenced by Judge Miller. Counsel talks about how it raises these ideas about invalid appellate waivers, considered intelligent appellate waivers. These are the very excuses that the Supreme Court has rejected. This Court had a list of three excuses. Waiver was not considered or intelligent. Individual was not informed of relief that they were potentially eligible for. And the individual was never advised of their appellate right in the first place. Those are the excuses. And the Supreme Court has said that those are not valid excuses. If you did not exhaust your administrative remedies, you have no claim to a collateral attack under Section 1326D. 1326D is not a substitute for your direct appeal. It is essentially a form of a safety valve for someone who has gone through the administrative appellate process and still had an underlying due process problem with their removal hearing. That is the sole purpose of 1326D. And Palomar Santiago has made it clear that those are mandatory provisions. As for the idea of Ms. Chavez, this Court can feel comfortable ruling on Ms. Chavez. Ms. Chavez, just as with Pereira, has no implications for immigration court jurisdiction. Thank you. Thank you, Counsel. Before we submit the case, let me just remark that the Court really appreciates your advocacy on both sides of the case. And both appellant and appellee have done an excellent job of advocating their client's position. So without further ado and with our thanks, we will submit United States v. Chavez-Sanchez. And the parties will hear from us in due course.
judges: Gould, Clifton, Miller